IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN FURMAN,

        Plaintiff,

vs.

WARDEN MISTY MACKEY,

        Defendant.

CASE NO.  1:24-CV-01925-PAB

JUDGE PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE

MAGISTRATE JUDGE
JONATHAN D. GREENBERG

**REPORT & RECOMMENDATION**

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of John Furman ("Furman" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Furman is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Furman*, Ashtabula County Court of Common Pleas Case No. 2020 CR 00577.   For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Furman's conviction as follows:

> {¶2} In December 2020, Furman was indicted on the following charges resulting from allegations that on two separate dates he had kidnapped, assaulted, and raped his wife: (1) kidnapping, a first-degree felony, in

1

violation of R.C. 2905.01(A)(4) and (C)(1), with a sexual motivation specification pursuant to R.C. 2941.147(A); (2) rape, a first-degree felony in violation of R.C. 2907.02(A)(2) and (B); (3) domestic violence, a third-degree felony, in violation of R.C. 2919.25(A); (4) kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(4) and (C)(1), with a firearm specification pursuant to R.C 2941.145(A), and a sexual motivation specification pursuant to R.C. 2941.147(A); (5) rape, a first-degree felony, in violation of R.C. 2907.02(A)(2) and (B), with a firearm specification pursuant to R.C. 2941.145(A); and (6) domestic violence, a third-degree felony, in violation of R.C. 2919.25(A) and (D)(4), with a firearm specification pursuant to R.C. 2941.145(A). The first three of these charges pertained to incidents alleged to have occurred on or about October 23, 2020. The latter three charges pertained to incidents alleged to have occurred on or about October 29, 2020.

{¶3} Following the filing of the indictment, the state moved for a competency evaluation. The issue of Furman's competency to stand trial was ongoing throughout much of the trial court's proceedings. On November 1, 2021, the trial court issued an entry deeming Furman competent to stand trial.

{¶4} Prior to the competency determination, on September 16, 2021, Furman moved to dismiss, arguing that his speedy trial time had elapsed.[] The state responded in opposition. Ultimately, the trial court overruled the motion.

{¶5} The case proceeded to jury trial. The jury acquitted Furman on the first three charges, which pertained to the October 23, 2020 incidents. The jury found Furman guilty of the following with respect to the October 29, 2020 incidents: kidnapping and the attendant sexual motivation specification, rape, and domestic violence. The trial court referred Furman for a presentence investigation and report, ordered the parties to prepare sentencing briefs, and set the matter for sentencing.

{¶6} At sentencing, the trial court sentenced Furman to 10 years of imprisonment on the kidnapping count, a minimum of 10 years of imprisonment on the rape count, and 24 months of imprisonment on the domestic violence count. The court ordered the kidnapping and rape sentences to run consecutively and the domestic violence count to run concurrently, for a minimum aggregate prison term of 20 years to a maximum term of 25 years.

*State v. Furman*, 2023-Ohio-3019, 223 N.E.3d 944, 947-48 (Ohio Ct. App. Aug. 28, 2023) (footnote omitted).

2

## II.    Procedural History

### A.    Trial Court Proceedings

On December 9, 2020, the Ashtabula County Grand Jury indicted Furman on the following charges: two counts of kidnapping in violation of O.R.C. § 2905.01(A)(4), with sexual motivation specifications on both counts and a firearm specification on one count; two counts of rape in violation of O.R.C. § 2907.02(A)(2), with a firearm specification on one count; and two counts of domestic violence in violation of O.R.C. 2919.25(A), with a firearm specification on one count.  (Doc. No. 11-1, Ex. 4.) Furman entered pleas of not guilty to all charges.  (Doc. No. 11-1, Ex. 5.)

The trial court issued an amended arraignment entry to add additional conditions as part of Furman's bond.  (Doc. No. 11-1, Ex. 6.)

On January 8, 2021, the State filed a motion for competency evaluation.  (Doc. No. 11-1, Ex. 7.) Counsel for Furman did not object to the motion.  (Doc. No. 11-1, Ex. 8.)

On January 20, 2021, the trial court ordered an examination to determine Furman's competence to stand trial.  (*Id.*)

On January 26, 2021, Furman, through counsel, filed a motion to modify bond (Doc. No. 11-1, Ex. 9), which the State opposed.  (Doc. No. 11-1, Ex. 10.)

On April 19, 2021, the trial court overruled the motion to modify bond.  (Doc. No. 11-1, Ex. 11.)

On May 12, 2021, Furman filed a renewed motion to modify bond. (Doc. No. 11-1, Ex. 12), which the State opposed.  (Doc. No. 11-1, Ex. 13.)

On June 1, 2021, the date the case was set for a competency hearing, the trial court granted defense counsel's motion to withdraw and appointed new counsel for Furman.  (Doc. No. 11-1, Ex. 14.)  The trial court noted the competency hearing would be reset.  (*Id.*)

The trial court held a competency hearing on July 16, 2021.  (Doc. No. 11-1, Ex. 15.)  The trial court took under advisement the testifying doctor's recommendation that Furman undergo a 20-day inpatient competency evaluation after failing to cooperate with a competency evaluation at the Ashtabula County Jail.  (*Id.*)  The trial court noted that defense counsel had advised the court that Furman intended to cooperate with the competency evaluation while in the Ashtabula County Jail.  (*Id.*)  The trial court further noted it had notified the doctor to schedule a time with the Ashtabula County Jail to interview Furman to determine competency as previously ordered.  (*Id.*)

On August 10, 2021, the trial court noted it had been informed that Furman had again refused to cooperate with the competency evaluation and ordered Furman to undergo an inpatient evaluation at a facility.  (Doc. No. 11-1, Ex. 16).

On September 22, 2021, the trial court held a hearing regarding the Forensic Report authored by Dr. VanDercar.  (Doc. No. 11-1, Ex. 17.)   At the hearing, defense counsel informed the trial court that Furman would not be stipulating to the Forensic Report.  (*Id.*)

On October 28, 2021, the trial court held a competency hearing, at which Dr. VanDercar testified regarding her Forensic Report.  (*Id.*)  Following the hearing, the trial court found Furman competent to stand trial.  (*Id.*)

While the competency issue was pending, Furman, through counsel, moved to dismiss the case based on violation of Ohio's speedy trial statute.  (Doc. No. 11-1, Ex. 18.)  The State filed a response in opposition to the motion to dismiss. (Doc. No. 11-1, Ex. 19.)

On January 7, 2022, the trial court overruled the motion to dismiss.  (Doc. No. 11-1, Ex. 20.)

The case proceeded to jury trial on February 14, 2022.  (Doc. No. 11-1, Ex. 21.)  On February 18, 2022, the jury returned its verdict, finding Furman not guilty of Counts One through Three, which concerned events on October 23, 2022, and guilty of Counts Four through Six, which concerned events on

October 29, 2022. (*Id.*) The jury further found Furman not guilty of the firearms specifications on Counts Four and Five but guilty of the sexual motivation specification on Count Four. (*Id.*) The jury further found Furman had previously been convicted of two domestic violence offenses. (*Id.*)

On March 21, 2022, the state trial court held a sentencing hearing. (Doc. No. 11-1, Ex. 24.) The trial court found Counts Four, Five, and Six were not allied offenses of similar import and did not merge. (*Id.*) The trial court sentenced Furman to 10 years in prison on Count Four, 10 years in prison on Count Five, and 24 months in prison on Count Six. (*Id.*) The sentences on Counts Four and Five were to run consecutively to each other, while the sentence on Count Six was to run concurrently to the sentences on Counts Four and Five, for a minimum term of imprisonment of 20 years and a maximum term of imprisonment of 25 years. (*Id.*)

**B.    Direct Appeal**

Furman, through counsel, filed a timely notice of appeal to the Eleventh District Court of Appeals. (Doc. No. 11-1, Ex. 26.) In his appellate brief, Furman raised the following assignments of error:

I.    FURMAN WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO A SPEEDY TRIAL.

Issue No. 1: Whether the trial court committed plain error by allowing a trial to proceed 457 days after Furman was arrested?

II.    THE TRIAL COURT ERRED WHEN [IT] DEFINED "REASONABLE DOUBT" IN A MANNER NOT CONSISTENT WITH THE STATUTORY DEFINITION.

Issue No. 1: Whether it was improper to add words to the definition of reasonable doubt that tended to soften the term?

III.    THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Issue No. 1: Whether the jury lost its way in determining that Furman had kidnapped and raped M.F.?

IV.    THERE WAS INSUFFICIENT EVIDENCE AGAINST FURMAN.

5

Issue No. 1: Whether there was sufficient evidence against Furman and whether the trial court erred in denying the Motion for Crim.R. 29 acquittal?

V.     FURMAN WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION

Issue No. 1: Whether counsel was ineffective for failing to assert Furman's right to a speedy trial?

Issue No. 2: Whether counsel was ineffective for failing to object to an incorrect definition of reasonable doubt.

(Doc. No. 11-1, Ex. 27.)  The State filed a brief in response (Doc. No. 11-1, Ex. 28), to which Furman replied.  (Doc. No. 11-1, Ex. 29.)

On August 28, 2023, the state appellate court affirmed Furman's convictions.  (Doc. No. 11-1, Ex. 30).  *See also State v. Furman*, 223 N.E.3d at 947.

On December 12, 2023, Furman, proceeding *pro se*, filed a Notice of Appeal and a Motion for Delayed Appeal with the Supreme Court of Ohio.  (Doc. No. 11-1, Ex. 31-32.)  On February 6, 2024, the Supreme Court of Ohio granted Furman's Motion for Delayed Appeal.  (Doc. No. 11-1, Ex. 33.)  In his Memorandum in Support of Jurisdiction, Furman raised the following Propositions of Law:

I.     Furman was denied his constitutional and statutory rights to a speedy trial.

II.     The trial court erred when it defined "reasonable doubt" in a manner not consistent with the statutory definition.

III.     The convictions were against the manifest weight of the evidence.

(Doc. No. 11-1, Ex. 34.)  The State did not file a response.

On June 11, 2024, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 11-1, Ex. 35.)

**C.    Post-Conviction Filings**

On March 31, 2023, while his direct appeal was pending, Furman, *pro se*, filed a petition to vacate or set aside judgment of conviction or sentence with the Ashtabula County Court of Common Pleas and

6

requested an evidentiary hearing.  (Doc. No. 11-1, Ex. 36.)  On the same day, Furman filed a Motion for Appointment of Counsel.  (Doc. No. 11-1, Ex. 37.)  In his petition to vacate or set aside judgment, Furman set forth the following claim:

> Statement of constitutional claim:
>
> Due to a clerical error by the Court, Defendant's right to a preliminary hearing within 10 days was violated. Also Defendant would ask that any other claims be preserved until an attorney has been appointed and can acess [sic] weather [sic] any other claims are valid.
>
> Short statement of facts supporting the claim:
>
> Defendant was arrested on 10-30-20 and preliminary hearing was not held until 11- 9-20 due to no fault of defendant. Also defendant was in jail in lieu of bond.

(Doc. No. 11-1, Ex. 36.)

On April 5, 2023, the State filed a response in opposition, arguing that the petition was barred by the doctrine of *res judicata*.  (Doc. No. 11-1, Ex. 38).

On May 15, 2023, the trial court denied Furman's petition to vacate or set aside judgment of conviction or sentence.  (Doc. No. 11-1, Ex. 39.)

Furman did not appeal the trial court's denial of his petition to vacate or set aside judgment of conviction or sentence.

## D.      Application to Reopen Appeal under Ohio App. R. 26(B)

On November 15, 2023, Furman filed a motion for an extension of time to file a motion for an application for reopening pursuant to App. R. 26(B).  (Doc. No. 11-1, Ex. 40.)  As grounds, Furman stated he had not yet received a full copy of the trial transcripts.  (*Id.*)

On December 15, 2023, the state appellate court found Furman failed to demonstrate good cause for an extension of time and overruled the motion for extension of time.  (Doc. No. 11-1, Ex. 41.)

7

On January 2, 2024, Furman filed another motion for an extension of time to file a brief for an application to reopen his appeal.  (Doc. No. 11-1, Ex. 42.)

On January 12, 2024, Furman filed a delayed application for reopening his appeal.  (Doc. No. 11-1, Ex. 43.)  Furman's Application raised the following arguments:

> APPELLANT WAS DENIED EFFECTIVE ASISTANCE [sic] OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION WHERE HID [sic] APPELLATE COUNSEL OMITTED A DEAD BANG WINNER, PREJUDICING APPELLANT TO RECEIVING A FULL REVIEW BY THE COURT.

1. Trial court erred when it granted the Appellee's motion for a competency hearing.

2. Trial court erred when it would not allow appellant to fire his trial counsel.

3. Trial court erred when it would not allow defense counsel to step down as attorney of record.

4. Trial court took an excessive amount of time to rule on motions.

5. Defense counsel was ineffective when it asked for a continuance for personal reasons.

6. Appellant feels the trial court was bias [sic] due to the fact that a grievance was filed in the Supreme Court of Ohio.

7. Appellant has a right to a reasonable bond.

8. Jury lost its way in determining that Appellant had committed rape, kidnapping and domestic violence.

9. Appellant's counsel was ineffective.

(*Id*.)  The State did not file a brief in opposition.

On March 11, 2024, the state appellate court found Furman failed to establish good cause for his delayed filing and overruled Furman's second motion for extension of time and his delayed application for reopening.  (Doc. No. 11-1, Ex. 44.)

Furman did not appeal the state appellate court's decision to the Supreme Court of Ohio.

**E.     State Habeas Petition**

On May 21, 2024, Furman, *pro se*, filed a petition for a writ of habeas corpus in the Supreme Court of Ohio. (Doc. No. 11-1, Ex. 45.) In his petition, Furman set forth the following claims for relief:

> PETITIONER SEEKS A WRIT OF HABEUS [sic] CORPUS BECAUSE HE WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO A SPEEDY TRIAL, HIS CONSTITUTIONAL RIGHT TO A REASONABLE BOND, AND HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF BOTH TRIAL AND APPEAL COUNSEL.
>
> 1.    Furman would state that he was deprived of his 6th amendment right to a reasonable bond.
>
>       Furman would state that trial court made a structural error by denying him a reasonable bond, by making the bond so high the court made it impossible for Furman to keep retained his counsel of choice William Bobulsky, thereby violating his constitutional right to effective assistance of counsel, his rights to steer and be a part of his own defense, and his right to counsel of choice.
>
> 2.    Furman would also contend that his right to a speedy trial was violated.
>
>       Furman would state that, trial court committed plain error in granting the state's motion for a competency hearing, however appeal counsel failed to advance Furman's argument that trial court erred in granting the state's motion for a competency hearing.
>
> 3.    Furman would also state that his trial counsel, Malcolm Douglas was ineffective in his assistance thereby violating Furman's 6th amendment right to effective assistance of counsel. Furman would state that counsel made a plain error by not objecting to or, calling an expert rebuttal witness.
>
> 4.    Furman would also state that his appeal counsel Edward Heindel was also ineffective in his assistance, thereby violating Furman's 6th amendment right to effective assistance of counsel.
>
> 5.    Furman would state that the trial court made plain error not granting his motion to fire trial counsel Malcolm Douglas.
>
> 6.    Furman would also contend that the convictions were against the manifest of the evidence.

(*Id.*)

On July 9, 2024, the Supreme Court of Ohio *sua sponte* dismissed this case.  (Doc. No. 11-1, Ex. 46.)

**F.**     **Federal Habeas Petition**

On November 4, 2024,[1] Furman filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Petitioner's right to a speedy trial was violated.
>
> > **Supporting Facts**:  The state court adjudication of petitioner's claim that his constitutional rights to a speedy trial was violated resulted in a decision that was contrary to clearly established federal law as determined by the supreme court of the united states in Barker v. Wingo.
>
> **GROUND TWO**:  Petitioner's right to a reasonable bond was violated.
>
> > **Supporting Facts**:  The state court adjudication of petitioner's claim that his constitutional rights to a reasonable bond was violated resulted in a decision that was contrary to clearly established federal law as determined by the supreme court in Stack v. Boyle.
>
> **GROUND THREE**:  Petitioner was denied his right to effective assistance to trial counsel.
>
> > **Supporting Facts**:  The state court adjudication of petitioner's claim that his constitutional right to effective assistance of trial counsel was violated resulted in a decision that was contrary to clearly established federal law as determined by the supreme court in Strickland v Washington.
>
> **GROUND FOUR**:  Ineffective assistance of appeal counsel.
>
> > **Supporting Facts**:  The state court adjudication of petitioner's claim that his constitutional right to effective assistance of appellate counsel was violated resulted in a decision that was contrary to clearly established federal law as determined in Strickland v. Washington.

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until November 4, 2024, Furman states that he placed it in the prison mailing system on April 1, 2024.  (Doc. No. 1 at 16.)  As that seems to be an error, the Court will use the November 4, 2024 receipt date.  Thus, the Court will consider the Petition as filed on November 4, 2024.  The Court notes there has been no challenge to the timeliness of Furman's Petition.

**GROUND FIVE**:  Trial court erred in it's [sic] definition of reasonable doubt.

> **Supporting Facts**:  The trial court erred when it defined "reasonable doubt" in a manner not consistent with statutory definition which clearly violated his constitutional right to due process which was contrary to federal law as clearly established in Sullivan v. Louisiana.

(Doc. No. 1; Doc. No. 1-2.)

On February 10, 2025, Warden Misty Mackey ("Respondent") filed the Return of Writ. (Doc. No. 11.)  Furman filed a Traverse on May 2, 2025.  (Doc. No. 21.)  On May 19, 2025, Respondent filed a Sur-Reply to Furman's Traverse.  (Doc. No. 22.)  On June 20, 2025, Furman filed a Reply to Respondent's Sur-Reply.  (Doc. No. 25.)

Throughout the pendency of this habeas action, Furman filed multiple motions to compel.  (Doc. Nos. 6, 10, 12, 14.)  On March 31, 2025, the Court, construing Furman's Third Motion to Compel (Doc. No. 12) as a Motion to Supplement, granted the Motion to Supplement the record with the transcript from the January 8, 2021 competency proceeding.  (Doc. No. 17.)  The Court denied Furman's First, Second, and Fourth Motions to Compel.  (*Id.*)

On April 10, 2025, Respondent supplemented the state court record.  (Doc. No. 19.)

On May 19, 2025, Respondent filed a motion to supplement the state court record (Doc. No. 23), which the Court granted.  (Non-document Order dated May 20, 2025.)  On May 20, 2025, Respondent supplemented the state court record.  (Doc. No. 24.)

### III. Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

11

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence

13

of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.      Application to Petitioner

### 1.      Ground One

In Ground One, Furman argues that his right to a speedy trial under the Sixth and Fourteenth Amendments was violated. (Doc. No. 1 at 4; Doc. No. 1-2 at 7, 9.)

Respondent argues that "Furman's federal constitutional claim was not fairly presented to the state appellate court." (Doc. No. 11 at 16.) Respondent asserts that "[w]hile Furman's direct appeal referenced his 'constitutional' rights, Furman's argument was based entirely on Ohio's speedy trial statute." (*Id.*) Respondent maintains that "'merely asserting that a state-law error violates the federal constitution cannot by itself justify jurisdiction.'" (*Id.*) (quoting *Hopings v. Walters*, Case No. 3:23-cv-00980-DAR, 2025

14

WL 218671, at *12 (N.D. Ohio Jan. 16, 2025)).  Therefore, Respondent argues, Furman's speedy trial claim is procedurally defaulted.  (Doc. No. 11 at 16.)

In his Traverse, Furman states that "[w]hile [he] would contend that his claim for a violation of speedy trial rights is not procedurally defaulted, he is a way-man [sic] of the law, and would therefore present cause and actual prejudice, to excuse any procedural default, should a default exist."  (Doc. No. 21 at 17.)  In addition, Furman argues that the reason his speedy trial claim was based on Ohio's speedy trial statute was because of appellate counsel (*id.* at 2-3), and that ineffective assistance of appellate counsel also excuses the procedural default.  (*Id.* at 18.)

In Respondent's Sur-Reply to the Traverse, Respondent argues that while Furman's brief to the state appellate court "made a rote reference to the Sixth and Fourteenth Amendments to the United States Constitution, the argument exclusively relied on state case law and the Ohio Revised Code."  (Doc. No. 22 at 4-5.)  Likewise, Furman's reply brief to the state appellate court relied on state case law.  (*Id.* at 5.) Respondent asserts that "[f]air presentation of a federal claim requires more than just the rote recitation of broad legal principles."  (*Id.*) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).  Furthermore, even if the speedy trial claim was fairly presented, Respondent maintains that it is meritless.  (*Id.*)

As another court in this Circuit has explained:

> In order to have properly exhausted a federal habeas claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "the legal and factual basis of the claim must be 'fairly presented' to the state courts so that they have an opportunity to remedy the alleged constitutional violation." *Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 860 (S.D. Ohio 2011) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

*Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019).

15

Here, Furman presented a speedy trial argument to the state appellate court exclusively under Ohio law.  (Doc. No. 11-1, Ex. 27; Doc. No. 11-1, Ex. 29.)  Although Furman invoked the "Sixth and Fourteenth Amendments to the United States Constitution" in the first sentence of his speedy trial argument, his appellate briefs focused solely on the application of state law, particularly the application of the Ohio's speedy trial statute.  (Doc. No. 11-1, Ex. 27, PageID# 301-03; Doc. No. 11-1, Ex. 29, PageID# 344-45.)

In another habeas case, a petitioner argued he had fairly presented his Confrontation Clause claim "by citing the United States Constitution, 'due process,' and his right to a 'fair trial,'" some of the state precedent he cited in his appellate brief contained Confrontation Clause analysis, and the preclusion of a line of inquiry "should have, by itself, alerted the Ohio Court of Appeals to a possible violation of the Confrontation Clause."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  The Sixth Circuit held McMeans failed to "fairly present" his Confrontation Clause claim to the state courts:

> We are of the opinion that the petitioner did not "fairly present" his claim. In his direct appeal, the petitioner focused entirely on the applicability of Ohio's rape shield law.  Ohio Rev.Code Ann. § 2907.02. He did not cite any federal precedent and his appellate brief only alleges that the trial judge's limitation on cross-examination denied him a "fair trial" and "due process." As this court recognized in *Franklin,* this is not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right. While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts.

*Id.* at 682.  *See also Morgan v. Warden*, Case No. 1:19-cv-93, 2021 WL 5630743, at *5 (S.D. Ohio Dec. 1, 2021) ("True, Morgan invokes 'a defendant's right to a fair trial and due process of law' at the outset of her evidentiary argument. (Obj., Doc. 14, #967). But Sixth Circuit case law suggests that it is not enough

16

to tack such an entirely unelaborated claim of a federal constitutional violation onto an argument otherwise grounded in state law.").

As the United States Supreme Court has made clear, "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

As a result, the Court finds Ground One is procedurally defaulted.[3]

### a.     Cause and Prejudice

Furman may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763.

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016). However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim). Furman failed to argue appellate counsel's

---

[3] Even if the Court determined Furman's speedy trial argument sufficiently stated a federal constitutional claim and therefore such a claim was not procedurally defaulted, it would be meritless. While Furman disputes the state appellate court's speedy trial calculations, he does not show how the state appellate court's calculation was an *unreasonable* application of clearly established federal law. The state appellate court reasonably considered the multitude of tolling events. "This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *Brown v. Bobby*, 656 F.3d 325, 332-33 (6th Cir. 2011).

ineffectiveness based on presenting Furman's speedy trial claim solely as a matter of state law in his delayed 26(B) Application, and so ineffective assistance of appellate counsel cannot excuse the procedural default. (Doc. No. 11-1, Ex. 43.) Furthermore, the state appellate court found Furman's delayed 26(B) Application to be untimely, resulting in a double default of any ineffective assistance of appellate counsel claim. (Doc. No. 11-1, Ex. 44.) In addition, Furman did not appeal the state appellate court's decision finding his 26(B) Application untimely to the Supreme Court of Ohio.

Therefore, any such claim of ineffective assistance of appellate counsel is itself procedurally defaulted and cannot serve as cause to excuse the procedural default.

The Court notes a petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse a petitioner's procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017).

### b.    Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir.

2003).  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

Here, Furman does not identify any new, reliable evidence of his actual innocence.  The Court finds Furman has not demonstrated he is entitled to the actual innocence exception.

### 2.    Ground Two

In Ground Two, Furman argues that his right to a reasonable bond was violated.  (Doc. No. 1 at 6; Doc. No. 1-2 at 18-21.)

Respondent argues that Ground Two is procedurally defaulted, as Furman did not appeal the denial of pretrial bond, nor did Furman present this claim in his direct appeal.  (Doc. No. 11 at 22.)  In addition, Respondent asserts that since Furman has been convicted, "any pretrial bond determination is now moot." (*Id.*)  Moreover, to the extent Furman asserts a violation of state law, such a claim is non-cognizable on habeas review.  (*Id.*)

In his Traverse, Furman argues that cause and prejudice excuses the procedural default of Ground Two.  Furman asserts that the failure of trial counsel to appeal the denial of pretrial bond is the result of ineffective assistance of trial counsel.  (Doc. No. 21 at 20.)  In addition, Furman argues that the failure to include this claim on direct appeal is the result of ineffective assistance of appellate counsel.  (*Id.* at 21.)

In Respondent's Sur-Reply to Furman's Traverse, Respondent argues that ineffective assistance of trial counsel based on failure to appeal the pretrial bond cannot excuse the procedural default; while Furman raised a claim of ineffective assistance of trial counsel on direct appeal, he did not include a claim that trial counsel was ineffective regarding bond.  (Doc. No. 22 at 6.)  Nor can ineffective assistance of appellate counsel excuse the procedural default, as Furman "did not file an application to reopen his direct appeal."  (*Id.*)

Furman concedes this claim is procedurally defaulted. (Doc. No. 21 at 20-21.) As a result, the Court finds Ground Two is procedurally defaulted.

### a. Cause and Prejudice

Furman may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763.

A review of the record reveals that while Furman asserted ineffective assistance of trial counsel on direct appeal, that argument was based on trial counsel's failure to assert Furman's speedy trial rights and failure to object to the definition of reasonable doubt, not trial counsel's failure to appeal the pretrial bond. (Doc. No. 11-1, Ex. 27, PageID# 309-11.) Therefore, any claim of ineffective assistance of trial counsel claim is itself procedurally defaulted and cannot excuse the procedural default of Ground Two.

In addition, as set forth above, the state appellate court found Furman's delayed 26(B) Application to be untimely, and Furman did not appeal this decision to the Supreme Court of Ohio. Therefore, any such claim of ineffective assistance of appellate counsel is itself procedurally defaulted and cannot serve as cause to excuse the procedural default.

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

### b. Actual Innocence

Again, Furman does not identify any new, reliable evidence of his actual innocence. The Court finds Furman has not demonstrated he is entitled to the actual innocence exception.

### 3. Ground Three

In Ground Three, Furman argues he was denied his right to the effective assistance of trial counsel based on trial counsel's failure to: (1) object to the testimony of nurse Gonzalez; (2) appeal the trial

court's denial of the motion to reduce bond; (3) challenge DNA evidence presented at trial; (4) object to M.F.'s testimony; (5) call Mary Kibler as a witness; and (6) object to the trial court's definition of reasonable doubt.  (Doc. No. 1 at 8; Doc. No. 1-2 at 21-27.)  In addition, Furman argues he received ineffective assistance of trial counsel based on trial counsel's continuances for health reasons.  (Doc. No. 1-2 at 23.)

Respondent argues that Ground Three is procedurally defaulted.  (Doc. No. 11 at 23.)  First, Furman failed to raise all of these sub-claims on direct appeal.  (*Id.*)  Second, Furman failed to present an ineffective assistance of trial counsel claim to the Supreme Court of Ohio.  (*Id.*)  Third, Furman failed to raise this claim in his petition for post-conviction relief.  (*Id.*)

Furman appears to concede Ground Three is procedurally defaulted and argues that ineffective assistance of appellate counsel excuses the procedural default.  (Doc. No. 21 at 34-35.)

A review of the record reveals that while Furman asserted ineffective assistance of trial counsel on direct appeal, that argument was based solely on trial counsel's failure to assert Furman's speedy trial rights and failure to object to the definition of reasonable doubt, not trial counsel's failure to appeal the pretrial bond.  (Doc. No. 11-1, Ex. 27, PageID# 309-11.)  In addition, Furman failed to raise any claim of ineffective assistance of trial counsel to the Supreme Court of Ohio.  (Doc. No. 11-1, Ex. 34.)  Furman also failed to include a claim of ineffective assistance of trial counsel in his petition for post-conviction relief.  (Doc. No. 11-1, Ex. 36.)  As a result, the Court finds Ground Three is procedurally defaulted.

### a.  Cause and Prejudice

Furman may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.

While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal."  *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).  Here, Furman had no constitutional right to counsel on a discretionary appeal to the Supreme Court of Ohio.  *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  Thus, any purported failure of his attorney in failing to raise certain issues on appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

In the absence of cause, a court need not reach the issue of prejudice.  *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

### b.  Actual Innocence

Again, Furman does not identify any new, reliable evidence of his actual innocence.  The Court finds Furman has not demonstrated he is entitled to the actual innocence exception.

### 4.  Ground Four

In Ground Four, Furman argues he received ineffective assistance of appellate counsel.  (Doc. No. 1 at 9.)  Furman asserts:

> Petitioner would state that on November 15, 2023 he filed a motion for an extension of time to file an application to reopen pursuant to appellate rule 26(B). This motion was filed on November 15, 2023, which was before the ninety-day deadline to file the application to reopen. Petitioner needed a copy

22

of his transcripts to properly file this motion, so he asked the trial courts for a copy, the trial court denied that request stating that appellate counsel had already been given a copy of the transcripts. (see attached journal entry, dated October 26, 2023) Petitioner, had repeatedly asked Mr. Heindel for a copy of the transcripts, when Mr. Heindel failed to send a full copy, then Petitoner filed a motion to compel Mr. Heindel to send a copy of the transcripts, however judge Sezon, overruled this motion. (see attached journal entry dated May 28, 2024). Petitioner received a journal entry from the appellate court denying his motion for an extension, (see attached journal entry dated December 15, 2023). Petitioner then sent a delayed motion to reopen, without the benefit of the trial transcripts. however appellate court denied motion stating untimely filing without good cause. Petitioner would state that needing the transcripts to file a proper motion, is a good cause reason to be delayed, however petitioner went ahead and filed the motion without the benefit of having the transcripts, and was still denied. (see attached journal entry). Had, Mr. Heindel provided a copy of the full transcripts, as he said he would, multiple times, (see attached J-Pay conversations) Petitioner would have been able to file his motion in a timely manner, which further proves Mr. Heindel's ineffective assistance, and helps further his agenda to extort Petitoner [sic].

(Doc. No. 1-2 at 27-28.)

Respondent argues that Furman's ineffective assistance of appellate counsel claim is procedurally defaulted as Furman failed to file a timely 26(B) Application, the state appellate court overruled his delayed 26(B) Application as untimely, and Furman "did not pursue any further review of the decision." (Doc. No. 11 at 28.)

In his Traverse, Furman argues that his appellate counsel "caused him to be procedurally defaulted by not providing the transcripts, as he promised, so petitioner could have filed his 26(b) motion on time." (Doc. No. 21 at 38.)  In addition, Furman asserts that he did pursue further review of the state appellate court decision on his delayed 26(B) Application by filing a state habeas corpus petition.  (*Id.* at 36.)

In Respondent's Sur-Reply to the Traverse, Respondent argues that Furman did not have the right to a second copy of the transcripts.  (Doc. No. 22 at 7.)  In addition, Furman could have pursued a discretionary appeal of the state appellate court's decision in the Supreme Court of Ohio, but did not.  (*Id.*) (citing Ohio Supreme Court Rule of Practice 5.02(A)(1)).

23

In his "Reply to Respondent's Sur-Reply," Furman argues he "was under no obligation to appeal this decision, and by law only has to allow the Ohio Supreme Court an opportunity to make a ruling on the merits, which he did by filing the state Habeus [sic] Corpus…."  (Doc. No. 25 at 5.)

A review of the record reveals that Furman sought an extension of time to file his 26(B) Application, stating as grounds that he was waiting on the trial transcripts.  (Doc. No. 11-1, Ex. 40.) Furman made no mention of appellate counsel's role in any delay in Furman receiving the transcripts. (*Id.*)  The state appellate court found Furman failed to show good cause for an extension of time to file his 26(B) Application:

> Here, Furman maintains he could not comply with the ninety-day deadline because he does not have a copy of his trial court transcripts. However, difficulty in obtaining the transcript alone does not constitute good cause. *State v. Tomlinson,* 8th Dist. Cuyahoga No. 83411, 2005-Ohio-5844, ¶ 3. Moreover, Furman cites a singular attempt to obtain his transcript through the filing of a motion for preparation of the transcript at the state's expense, filed in the trial court 44 days after our judgment. The trial court's on line docket indicates that, on October 26, 2023, the trial court denied Furman's motion "as the transcript was already prepared and provided to defendant['s counsel at state expense." Further, Furman does not explain why good cause would exist until February 24, 2024 to file an application to reopen, as, instead, he appears to have requested extension to this date solely because it provides an additional 90 days to file the application. *See State v. Baker,* 7th Dist. Columbiana No. 03 CO 24, 2005-Ohio-565, ¶ 11, citing *State v. Thompson,* 7th Dist. Jefferson No. 97 JE 40, 2003-Ohio-1607, ¶ 9 ("good cause is not present at a point in the future merely because it may have been present at a time in the past").
>
> Accordingly, Furman has not demonstrated good cause to extend the time for him to file an application to reopen to February 24, 2024, and, thus, his motion for an extension is overruled.

(Doc. No. 11-1, Ex. 41, PageID# 436-37.)

In his delayed 26(B) Application, Furman argued that the ineffective assistance of appellate counsel caused his late filing, as Furman had "requested the trial transcripts from appeal counsel on several different occasions, (see exhibit A)," and while "counsel agreed to send the transcripts," as of "12-29-23 Appeal counsel has only sent part of the transcripts."  (Doc. No. 11-1, Ex. 43, at PageID# 442.)  In

addition, Furman asserted that "limited time and access to legal library has contributed to the delay." (*Id.*) Furman also told the state appellate court that he was "a lay-man of the law, and trying to figure out the correct way to present to the court his argument." (*Id.*)

In rejecting Furman's delayed 26(B) Application as untimely, the state appellate court found as follows:

> However, continued alleged ineffective assistance of counsel does not establish good cause for a delay in filing an application for reopening. *See State v. Gumm,* 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861, ¶ 8. Further, the lack of access to legal materials or library limitations does not constitute good cause for an untimely filing of an application to reopen. *State v. Tomlinson,* 8th Dist. Cuyahoga No. 109614, 2022-Ohio-2575, ¶ 12; *accord State v. Martin,* 7th Dist. Columbiana No. 18 CO 0033, 2021-Ohio-4290, ¶ 5. In addition, Furman "cannot rely on his own alleged lack of legal training to excuse his failure to comply with the deadline." *Gumm* at ¶ 10.
>
> Accordingly, Furman has failed to establish good cause for his untimely filing.

(Doc. No. 11-1, Ex. 44, at PageID# 466-67.)

Furman failed to appeal the state appellate court's denial of his 26(B) Application as untimely to the Supreme Court of Ohio.  While Furman alleged ineffective assistance of appellate counsel in a state habeas petition to the Supreme Court of Ohio, that was not the proper avenue for challenging the state appellate court's denial of his 26(B) Application.[4]

---

[4] The fact that Furman raised this claim in his state habeas petition does not remedy his procedural default. *See, e.g.*, *Daniel v. State,* 786 N.E.2d 891, 893 (Ohio 2003) ("habeas corpus is not a substitute for appeal or postconviction relief"); Ohio Supreme Court Rule of Practice 5.02(A)(1).  *See also, e.g., Mosley v. Petro,* Case No. 5:04CV726, 2006 WL 2640958, at *7 (N.D. Ohio Sept. 13, 2006) ("A state prisoner must complete one full round of the state's appellate review system including a petition for discretionary review when available by the state's highest court, before filing a habeas petition in federal court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-33, 144 L.Ed.2d 1 (1999); *see also Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir. 1990). A petitioner procedurally defaults those claims that he fails to appeal to the Ohio Supreme Court. *Barkley v. Konteh,* 240 F. Supp. 2d 708 (N.D. Ohio 2002); *see Dickerson v. Mitchell,* 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004)."); *Davis v. Morgan*, Case No. 2:15-cv-00613, 2017 WL 56034, at *3 (S.D. Ohio Jan. 5, 2017) ("This Court has repeatedly held that the failure to

As a result, the Court finds Ground Four is procedurally defaulted.

### a.    Cause and Prejudice

Furman may nevertheless obtain a merits review of the procedurally defaulted claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.

As the Court understands Furman's argument, he argues that the cause to excuse his procedural default is his appellate attorney's failure to timely provide him with his trial transcripts.  However, when Furman first moved for an extension of time to file his 26(B) Application, he failed to notify the state appellate court that the delay in receiving his trial transcripts was the result of his appellate attorney.  Nor does Furman explain why he waited until November 15, 2024 to file his motion for extension of time (Doc. No. 11-1, Ex. 40), as the state appellate court denied his direct appeal on August 28, 2023.  (Doc. No. 11-1, Ex. 30).  *See also State v. Furman*, 223 N.E.3d at 947.  Furman also fails to explain why he waited until October 11, 2023 to file a motion to request the trial transcripts (Doc. No. 11-1, Ex. 41), and why he did not contact his attorney for a copy of the trial transcripts until November 2024.  (Doc. No. 11-1, Ex. 43, at PageID# 455.)

In addition, it is well-settled in the Sixth Circuit that a petitioner's *pro se* status or limited law library access is insufficient to establish cause to excuse a procedural default. *See, e.g., Bonilla*, 370 F.3d at 498; *see also Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) (holding that the petitioner's "pro se status and ignorance of his rights do not constitute cause excusing his failure to raise grounds before the state courts"); *Rogers v. Warden, Warren Corr. Inst.*, No. I:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) ("[t]he petitioner's pro se status, ignorance of the law or procedural requirements, or limited

---

file a timely appeal to the Ohio Supreme Court in Rule 26(B) proceedings constitutes a procedural default of a claim of the denial of the effective assistance of appellate counsel....").

access to legal materials does not constitute cause" to excuse his procedural default of his habeas claims), *report and recommendation adopted by* 2011 WL 1753711 (S.D. Ohio May 9, 2011).

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson*, 238 F.3d at 409; *Sandridge*, 2017 WL 2255378, at *11.

### a. Actual Innocence

Again, Furman does not identify any new, reliable evidence of his actual innocence. The Court finds Furman has not demonstrated he is entitled to the actual innocence exception.

### 5. Ground Five

In Ground Five, Furman argues that the "[t]rial court erred in it's [sic] definition of reasonable doubt." (Doc. No. 1 at 11.) Respondent argues that this claim is procedurally defaulted, as Furman's trial counsel did not object to the jury instruction and the state appellate court reviewed this claim "only for plain error." (Doc. No. 11 at 30-31.) In his Traverse, Furman fails to provide any argument regarding cause or prejudice to excuse any procedural default. (Doc. No. 21.)

On direct appeal, Furman raised an argument regarding the trial court's definition of reasonable doubt to the state appellate court. (Doc. No. 11-1, Ex. 27.) In its decision, the state appellate court found Furman had waived this argument at the trial level and conducted a "plain error" review of the issue:

> {¶21} In his second assigned error, Furman argues:
>
> {¶22} "The trial court erred when [it] defined 'reasonable doubt' in a manner not consistent with the statutory definition."
>
> {¶23} R.C. 2901.05(C) provides that "[a]s part of its charge to the jury in a criminal case, the court shall read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt,' contained in division (E) of this section." R.C. 2901.05(E) provides:
>
>> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on

moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

{¶24} "In a criminal case, where the trial court's charge to the jury amplifies upon the statutory definition of reasonable doubt, mandated by [former] R.C. 2945.04, the complained of amplification must be erroneous and prejudicial to the complaining party before the judgment of the trial court will be disturbed." *State v. Sargent*, 41 Ohio St.2d 85, 322 N.E.2d 634, 635 (1975), paragraph two of the syllabus.

{¶25} Here, the trial court instructed the jury on "reasonable doubt" as follows:

> The legislature of the State of Ohio has defined the term reasonable doubt and that definition is as follows; reasonable doubt is present when jurors after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not a mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.
>
> Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs. *You should not convict this defendant unless the evidence removes from your mind all reasonable doubt of his guilt. On the other hand, you should not acquit this defendant upon trivial suppositions.*

(Emphasis added.)

{¶26} On appeal, Furman challenges the last portion of the trial court's instruction, that the jury "should not acquit this defendant upon trivial suppositions." Furman maintains he was prejudiced by the addition of this phrase to the instruction because "[i]t is a phrase that has a tendency to make a conviction more likely."

{¶27} However, the defense did not object to the instruction. Therefore, Furman has forfeited all argument relative to this issue aside from plain error. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "However, the accused bears the burden of proof to demonstrate plain error on the record, * * * and must show 'an error, i.e., a deviation from a

28

legal rule' that constitutes 'an "obvious" defect in the trial proceedings[.]'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "[E]ven if the error is obvious, it must have affected substantial rights," meaning "'that the trial court's error must have affected the outcome of the trial.'" *Rogers* at ¶ 22, quoting *Barnes* at 27, 759 N.E.2d 1240.

{¶28} This court has previously addressed an identically phrased addition to the instruction in the context of plain error. *State v. McMillen*, 11th Dist. Ashtabula No. 94-A-0050, 1995 WL 907889, *9 (Oct. 2, 1995). In *McMillen*, we relied on *State v. Jester*, 32 Ohio St.3d 147, 512 N.E.2d 962 (1987), and *State v. Manross*, 11th Dist. Ashtabula No. 1295, 1987 WL 14175 *8 (July 10, 1987). In *Jester* and *Manross*, the trial courts employed the "trivial supposition" language in the jury charge, but the appellants failed to demonstrate prejudice arising from the addition. Likewise, here, although Furman speculates that the jury may have been unaware of the meaning of "trivial supposition," such speculation does not in itself demonstrate the requisite prejudice. As we stated in *McMillen*, "[w]hile we agree that any amplification upon the definitions provided in R.C. 2901.05(D) is unnecessary and inadvisable, the amplification complained of in the instant case certainly does not constitute plain error." *McMillen* at *9, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶29} Accordingly, Furman's second assigned error lacks merit.

(Doc. No. 11-1, Ex. 30). *See also State v. Furman*, 223 N.E.3d at 951-52.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648–649 (6th Cir. 2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). "The state court's plain error review did not constitute a waiver of the procedural default." *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012). *See also Shafer v. Wilson*, 364 F. App'x 940, 945 (6th Cir. 2010) (finding the State of Ohio expressly enforced its contemporaneous objection rule where "the last

state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief.")

As the state appellate court correctly noted, Furman's counsel did not raise these objections to the trial court. Accordingly, the first three elements *of Maupin* test are satisfied as Furman failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review. As set forth above, the state appellate court's plain error review did not waive the procedural default. As such, the Court finds Ground Five is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.) As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488). Prejudice does not occur unless the petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason*, 320 F.3d at 629. Here, Furman has neither presented any cause for his default, nor has he alleged ensuing prejudice.[5] In addition, Furman fails to present any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground Five be dismissed as procedurally defaulted.

---

[5] The Court notes that while Furman raised a claim of ineffective assistance of trial counsel claim based on failure to object to the definition of reasonable doubt to the state appellate court, he failed to raise this issue on appeal to the Supreme Court of Ohio. Therefore, any claim of ineffective assistance of trial counsel is also procedurally defaulted and cannot serve to excuse the procedural default.

## IV.    Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Dated: July 7, 2025                                     _s/ Jonathan Greenberg_
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge


## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**